UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHANIE AAMES, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 13-2008 |
| v. | : | MEMORANDUM OPINION & ORDER |
| FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., et al., | : | |
| Defendants. | : | |

This matter is before the Court cross-motions for partial summary judgment on Count One of the Amended Complaint in which Plaintiff Stephanie Aames seeks a Declaratory Judgment that her homeowners' insurance policy holder, Defendant Fidelity and Guaranty Insurance Underwriters, Inc., failed to provide notice of nonrenewal of her Policy # 9834557706331 and, as a result, insurance coverage continued to be effective as of September 28, 2012, the date a fire destroyed Plaintiff's Pennsville, New Jersey house; Fidelity argues that the policy was effectively non-renewed prior to the fire.  Oral argument was heard on the cross-motions on September 10, 2014 and the record of that proceeding is incorporated here.

Factual Background & Procedural History

This action arises from a September 28, 2012 house fire on Plaintiff's property located at 179 South Hook Road, Pennsville, New Jersey.  According to the First Amended Complaint, on September 29, 2012, when Plaintiff notified her homeowners' insurance policy[1] holder, Defendant Fidelity and Guaranty Insurance Underwriters, Inc., of her loss, she was advised that her policy had been cancelled effective September

---

[1] Fidelity issued Homeowners Policy No. 983455770 633 1 to Plaintiff with a policy period of September 19, 2011 to September 19, 2012.  Schmidt Cert., Jan. 22, 2014, Ex. A; Hager Cert., Mar. 24, 2014, Ex. A.

19, 2012, and not renewed.[2] (Am. Compl. ¶ 3.) Plaintiff alleges that she was not provided notice of this cancellation before the fire occurred on September 28, 2012, and therefore asserts a claim against Fidelity for a declaratory judgment that coverage remained in full force and effect. (Am. Compl. ¶ 5; Count One.) Plaintiff also alleges that Fidelity's cancellation and non-renewal of her policy was arbitrary, capricious, and unfairly discriminatory because it was based on prior losses; she therefore asserts that the cancellation and non-renewal was ineffective, and coverage remained in full force and effect. (Am. Compl. ¶ 8-10; Count Two.) Finally, Plaintiff claims that Fidelity breached its contractual obligation to provide insurance coverage. (Am. Compl. ¶ 13; Count Three.) Fidelity has maintained, since its original Answer, (Doc. No. 14), that it issued a Notice of Nonrenewal to Plaintiff on August 15, 2012, advising that the policy would not be renewed on September 19, 2012 because Plaintiff had sustained three or more losses within the previous five years,[3] rendering the risk ineligible for Fidelity's Homeowner Program. Hager Cert., Mar. 24, 2014, Ex. B.

Plaintiff also has sued her insurance agent, Defendant USI Insurance Services, for breach of contract (Am. Compl. Count Four) and negligence (Am. Compl. Count Five) because USI did not notify Plaintiff of the cancellation and non-renewal of her insurance policy, and failed to procure replacement coverage.

---

[2] By letter dated October 12, 2012, Fidelity denied Plaintiff's insurance claim on the basis that her policy was cancelled effective September 19, 2012 and not renewed; as a result, the policy was not in effect on the date of the fire. Hager Cert., Mar. 24, 2014, Ex. C. The letter also stated that "[l]etters from both our underwriting department and your agent were mailed to you on July 19, 2012 informing you of the decision and the date of cancellation." Id.

[3] The prior losses consisted of two wind losses dated June 1, 2009 and March 19, 2011, two alleged theft losses dated November 6, 2011 and February 19, 2012, and a liability loss dated April 4, 2012. Hager Cert., Mar. 24, 2014, Ex. B. With respect to the February 19, 2012 theft loss, Plaintiff pleaded guilty to insurance fraud pursuant to N.J. Stat. Ann. 2C:21-4.6a.

In addition, Plaintiff has sued her mortgage company, Defendant Wells Fargo Home Mortgage.  As part of her mortgage loan agreement (1) Plaintiff was required to escrow monies to pay, among other things, casualty insurance premiums and (2) the mortgage holder agreed to keep the property insured.  (Am. Compl. ¶ 27-28.)  Plaintiff alleges that in July 2012, Wells Fargo received notice from Fidelity that the insurance on Plaintiff's property would not be renewed, but Wells Fargo failed to advise Plaintiff of such and failed to take any other steps to ensure that Plaintiff's property was covered.  (Am. Compl. ¶ 32.)  Therefore, Plaintiff has asserted a claim against Wells Fargo for breach of contract.  (Am. Compl. Count Six.)  With leave of Court, Plaintiff also added a claim against Wells Fargo for violation of RESPA, 12 U.S.C. § 2605(g) and N.J. Stat. Ann. § 17:16-F-18, because Wells Fargo allegedly failed to timely pay the premium for Plaintiff to obtain coverage from Selective Insurance Company, rather than Fidelity, as Plaintiff had requested in January and February of 2012.  (Am. Compl. ¶ 39-44; Count Seven.)

On October 24, 2013, the New Jersey State Fire Marshal issued an Incident Report concerning the September 28, 2012 fire at Plaintiff's property.  In his report, the Fire Marshal concluded that the fire was incendiary in nature with multiple points of origin.  Hager Cert., Mar. 24, 2014, Ex. D.  On November 1, 2013, Fidelity filed a Motion to Amend its Answer and assert a Counterclaim based upon the information provided by the Fire Marshal's Incident Report and the results of Fidelity's own investigation, which included a May 1, 2013 inspection of Plaintiff's property.

Prior to the filing of Fidelity's Motion, Wells Fargo had filed a Motion to Dismiss and Plaintiff cross-moved for leave to file an Amended Complaint.  On December 11, 2013, this Court granted in part and denied in part Wells Fargo's Motion to Dismiss and granted Plaintiff's cross-motion to amend to allow her to assert the RESPA claim against

3

Wells Fargo.  Plaintiff filed a First Amended Complaint on December 18, 2013.  On December 23, 2013, Fidelity filed an Answer to the First Amended Complaint and a Counterclaim, mirroring the proposed pleading that was the subject of its Motion to amend to include the defenses that the fire was incendiary in nature and that Plaintiff was involved in intentionally causing the fire in violation of the "Concealment or Fraud" provision of the homeowners' policy and a counterclaim against Plaintiff under New Jersey's Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33(a)-1.

On January 8, 2014, the Honorable Karen M. Williams, United States Magistrate Judge, dismissed as moot Fidelity's Motion for Leave to file an Amended Answer and Counterclaim.  The Judge determined that in light of Plaintiff's filing an Amended Complaint, leave of Court was not required for Fidelity to file its Answer to the Amended Complaint and Counterclaim.  Aames v. Fidelity & Guaranty Ins. Underwriters, Inc., No. 13-cv-2008, Doc. 58 (D.N.J. Jan. 8, 2014).  "The plain language of the Rule does not dictate the need for leave of court nor does it provide that a party respond only to amended portions of the amending pleading—to the contrary, the Rule states the required response is to the amended pleading."  Id.  As such, Fidelity has advanced the alternative defenses that its policy was not in effect at the time of the loss, but if it was, Plaintiff's actions constituted violations of the Concealment or Fraud condition of the policy and her claim would be further barred by the policy's Intentional Loss exclusion.

February 5, 2014, Plaintiff filed a Motion to Strike the Third, Fourth, and Fifth Affirmative Defenses contained in Fidelity's Answer to the First Amended Complaint and to Strike Fidelity's Counterclaim pursuant to Federal Rule of Civil Procedure 15(a) because they were filed without the Court's permission.  Doc. No. 66.  Alternatively, Plaintiff seeks to Dismiss the Third, Fourth, and Fifth Affirmative Defenses and the Counterclaim contained in Fidelity's Answer to the First Amended Complaint pursuant

4

to Rule 12(b)(6) for failure to state a claim because the amendments allegedly have no basis in fact and are futile, or to strike the same pursuant to Rules 9(b), and 12(f) for failure to plead the allegations of fraud with particularity and for pleading an insufficient defense containing impertinent or scandalous matter.  Specifically, Plaintiff argues that the results of Fidelity's own investigation into the fire is merely an opinion[4], not facts that would form a sufficient basis for a Counterclaim of fraud.  Plaintiff also argues that the Fire Marshal's Report should be disregarded under Daubert because it is does not establish that it is based upon reliable principles and methods of fire investigation as established by the National Fire Protection Association.

      Federal Rule of Civil Procedure 15 governs amendments to pleadings.  See Fed. R. Civ. P. 15.  The Rule provides that leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Thus, leave generally should be granted absent undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962).  The decision as to whether leave to amend a complaint should be granted is a matter committed to the sound discretion of the district court.  Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993).

      Plaintiff's arguments against allowing Fidelity's Answer to her Amended Complaint relate to the merits of Fidelity's Affirmative Defenses and Counterclaim which allege fraud and misrepresentation based upon information acquired after the

---

[4] Plaintiff takes particular issue with Fidelity's conclusion that she had a "motive" to commit arson due to a March 19, 2012 Notice of Intention to Foreclose which indicated that Plaintiff was behind in her mortgage payments by two months for a total of $2,330.49.  Hager Cert., Mar. 24, 2014, Ex. E.

original filings to the effect that the fire may have been incendiary in nature with multiple points of origin. As such, at oral argument the Court denied the motion seeking to strike or dismiss Fidelity's Answer.

Discussion

Plaintiff also has filed a Motion for Partial Summary Judgment. (Doc. No. 63.) By this motion, Plaintiff seeks a Declaratory Judgment that Fidelity failed to provide notice of nonrenewal of Policy # 9834557706331 and, as a result, insurance coverage continued to be effective as of September 28, 2012, the date a fire destroyed Plaintiff's house. Fidelity has cross-moved for summary judgment on Count One of the Amended Complaint, arguing that the policy was effectively non-renewed prior to the fire. (Doc. No. 75.)

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether

a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7

249 (1986). Credibility determinations are the province of the factfinder. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

It is undisputed that Fidelity Policy 983455770633 covered the period of September 19, 2011 to September 19, 2012. The Declarations Page of that Policy had been changed effective November 19, 2008[5] to reflect the mailing address of the named insured Stephanie Aames as 496 W Calle Tuberia, Casa Grande, Arizona 85294. The "Residence Premises" covered continued to be 179 S. Hook Road, Pennsville, New Jersey 08070. Schmidt Cert., Jan. 22, 2014, Ex. A; Hager Cert., Mar. 24, 2014, Ex. A, C.

On August 15, 2012, Fidelity issued a Notice of Nonrenewal for Policy 983455770633, which was to expire effective September 19, 2012. It stated, "Risk in ineligible for our homeowner program due to the fact: Insured has had 3 or more losses within the past 5 years," and referenced wind losses from 06/01/09 and 03/19/11 and theft on premises losses on 11/06/11 and 02/19/12, as well as an additional liability loss on 04/04/12. Hager Cert., Mar. 24, 2014, Ex. E. The Notice of Nonrenewal was one of 45 notices grouped together for mailing by Fidelity on August 15, 2012. Hanley Cert., Mar. 19, 2014, ¶ 1-2, Ex. A, C. It was sent via first class mail to Plaintiff's Arizona mailing address that day. Hanley Cert., Mar. 19, 2014, ¶ 1-9, Ex. B, C.[6]

---

[5] In response to an October 18, 2007 letter referencing First Trenton Indemnity Company Homeowners Policy 63305440, Plaintiff wrote "re: my property located at 179 S. Hook Rd., Pennsville, NJ 08070 – this property is owner occupied. The address you have on file for mailing premiums is for mailing purposes only, as I travel for business in the Southwest frequently. Continue to send any mailings to the address of 496 W Calle Tuberia, Casa Grande, AZ 85294." Hager Cert., Mar. 24, 2014, Ex. B.

[6] The record also contains letters from Defendant USI to Plaintiff at the Arizona address, dated August 8, 2012 referencing Fidelity's plan to cancel the Policy "effective 9/19/12 due to 3 or more losses within the past 5 years" and September 26, 2012 as a final reminder that the "Policy has been cancelled effective 9/19/2012 due to the legal notice of cancellation sent to [Plaintiff] by Fidelity." Hager Cert., Mar. 24, 2014, Ex. G, H.

8

The Nonrenewal provision of the Policy at issue is amended by the New Jersey form endorsement and is set forth at Section 4 of the Policy, which states:

a.  We may elect not to renew this policy for any reason permitted to cancel this policy. [E.g., increased hazard or material change in the risk assumed . . . .] If we elect not to renew this policy, we will deliver or mail a notice of nonrenewal, stating the reasons for nonrenewal, to you at least 30 days but not more than 120 days before the expiration date of this policy.

b.  This nonrenewal notice may be delivered to you *or mailed to you at your mailing address shown in the Declarations* by:
(1)  Certified mail; or
(2)  First class mail if we have obtained, from the U.S. Post Office, a date stamped proof of mailing showing your name and address.

Schmidt Cert., Jan. 22, 2014, Ex. A; Hager Cert., Mar. 24, 2014, Ex. A, C (emphasis added). This language reflects the regulations promulgated by New Jersey's Department of Banking and Insurance which provide, "[a]ll fire and casualty policies of insurance, except accident and health policies, shall provide for the issuing company to give . . . [t]hirty days' written notice to the insured of said company's intent not to renew any policy." N.J. Admin. Code 11:1-5.2(a)(3). Further, "[n]o nonrenewal or cancellation shall be valid unless notice thereof is sent . . . [b]y first class mail, if at the time of mailing the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and the insurer has retained a duplicate copy of the mailed notice." N.J. Admin. Code 11:1-20.2(i)(2).

Here, the record shows that Fidelity's Notice of Nonrenewal was mailed to Plaintiff at her mailing address shown in the Declarations. See Ward v. Merced, 650 A.2d 10 (N.J. Super. Ct. App. Div. 1994) (Form 3877 constitutes proof of mailing). This satisfies the notice requirement provided for by the Policy and does not offend New Jersey's administrative regulations. Although Plaintiff has denied receipt of the Notice, "[a]n insured need not actually receive a cancellation notice in order for it to be effective, provided that the statutory proof of mailing has been satisfied."

9

Nat. Ins. Co. on Behalf of NJAFIUA, 615 A.2d 1259 (N.J. Super Ct. App. Div. 1992).  The determinative factor is the mailing of the notice, not its receipt.  Needham v. N.J. Ins. Underwriting Ass'n, 553 A.2d 821 (N.J. Super Ct. App. Div. 1989).  While Plaintiff has argued that that the New Jersey requirement of notice "to the insured" imposes an obligation to insurance companies to determine a physical location of each client, neither the statutes nor the case law supports such a burden.[7]

## Conclusion

For these reasons, as well as those articulated on the record during oral argument,

IT IS ORDERED on this 25th day of September, 2014 that Plaintiff's Motion for Partial Summary Judgment [63], seeking a Declaratory Judgment that Defendant Fidelity failed to provide notice of nonrenewal of Policy # 9834557706331 and, as a result, insurance coverage continued to be effective as of September 28, 2012, the date a fire destroyed Plaintiff's house, is hereby DENIED.

IT IS FURTHER ORDERED that Fidelity's cross-motion for summary judgment on Count One of the Amended Complaint [75] is hereby GRANTED.

   /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.

---

[7] Plaintiff argued that a Fidelity representative, in investigating a prior claim of loss, made notes that tend to show the company's "actual knowledge" that Plaintiff had left Arizona upon separation from her husband there, and "moved" to her New Jersey residence as of July 19, 2012.  (Pl. Br., p. 9.)  As the insurance company points out, however, the assumption always was that Plaintiff "resided" at her "Residence Address." The circumstance that she chose to receive correspondence regarding the insurance policy at a separate "mailing address" should not serve to invalidate any otherwise proper notice provided through such channel.